UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN NEVIAS,

                              Plaintiff,

                  -v-

CRYSTAL VISION, LLC,

                              Defendant.

23-CV-7075 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Kevin Nevias brings this action against Crystal Vision, LLC ("Crystal Vision"), based on Nevias's discharge and failure to receive bonus payments for the 2021 and 2022 calendar years.  Nevias asserts claims of breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and promissory estoppel.  Nevias also brings claims for failure to pay wages and retaliation under the New York Labor Law ("NYLL"), Article 6, Sections 190 *et seq.* and 215.

Before the Court is Defendant's motion to dismiss the complaint for failure to state a claim.  For the reasons that follow, the motion is granted in part and denied in part.

I.      **Background**

        A.      **Factual Background**

The following facts are drawn from Plaintiff's Second Amended Complaint (ECF No. 21 ("SAC")), and are assumed to be true for the purposes of resolving Defendants' motion to dismiss.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015).

Plaintiff Kevin Nevias is a skilled professional in information security and a former employee of Omnicom, a "media, marketing, and corporate communications holding company."

(SAC ¶¶ 1, 4, 8.)  Omnicom is the sole member of Defendant Crystal Vision, a foreign limited liability company headquartered in New York.  (*Id.* ¶¶ 5, 7-8.)

Nevias was recruited in August 2021, by an outside search group, to work for Crystal Vision.[1]  (*Id.* ¶¶ 9-10.)  Nevias indicated to the recruiter that he would need a minimum annual salary of $300,000 to convince him to leave his current job, where he had worked for nearly five years.  (*Id.* ¶ 10.)

Shortly thereafter, the outside recruiter emailed Nevias to tell him that Crystal Vision had given a verbal offer that met Nevias's salary requirements, including a set salary of $265,000 and a minimum bonus of 15% of that base salary.  (*Id.* ¶ 11.)  When Nevias emailed to confirm this salary arrangement, the recruiter responded: "265+ 15% (which was paid out 100% of 15% up to 200% of it for the past 8 years). The bonus can go higher. That is a minimum."  (*Id.*)

On August 9, 2021, Crystal Vision sent Nevias a written offer letter that included the language:

> **Compensation**[:]  You will be paid an annual salary of $265,000. . . . You are eligible to participate in the management bonus pool and your first bonus will be determined after the 2021 calendar year (payable in 2022).  Your annual bonus target will be 15% of your base salary.  Your annual bonus may be more or less and will be based on your performance and on the overall discretionary bonus pool approved for the Company each year.  Bonuses are discretionary and are conditioned upon your continued employment through the payment date of the bonus. . . . You are required to be employed by the Company on the date any bonus otherwise would be paid in order to be eligible to receive such bonus. . . .

> **Entire Agreement**[:]  This letter and the Company's Confidentiality Agreement contain the entire agreement between you and the Company.  You acknowledge that, in accepting this offer, you have not relied upon any promise or representation, whether written or verbal, that is not expressly stated in this offer letter. . . .

---

[1] While Nevias refers to Defendant Crystal Vision, LLC, as "Omnicom" throughout his complaint, Defendant confirms that because Omnicom is the sole member of Crystal Vision, LLC, the two can be properly referred to "interchangeably" for the purposes of this motion. (ECF No. 23 at 1, n.1.)  To avoid further confusion, the Court will refer to Defendant as "Crystal Vision" unless an Omnicom-specific role is implicated.

**At-Will Employment**[:]  While we are confident that your time with OMC-IT, Crystal Vision Group will be mutually rewarding, we do need to point out that our employment relationship can be ended by you or OMC-IT, Crystal Vision Group at will.  This means that you and the Company are both free to terminate your employment at any time . . . .

(ECF No. 24-2.)  A week later, Nevias followed up with Crystal Vision to ask whether he would receive a prorated bonus for his 2021 work consistent with the terms of the offer letter.

(SAC ¶ 13.)  Stephanie Eustache, Omnicom's Human Resources ("HR") Director, confirmed in writing that Nevias would be eligible for the 2021 prorated bonus.  (*Id.*)  In or around the end of August 2021, Nevias began working as Omnicom's Business Information Security Officer.

(*Id.* ¶ 9.)

With a base salary of $265,000, Nevias had the highest base salary of anyone on his team, including his manager, Christina Mazzone.  (*Id.* ¶¶ 11, 21.)  This pay disparity was noted by Mazzone.  (*Id.* ¶ 22.)  Nevias alleges that, on one occasion, shortly after he was hired, Mazzone commented on his high pay in a "demeaning and resentful tone."  (*Id.*)

About seven months into his new job, Nevias asked Mazzone about the status of his 2021 bonus.  (*Id.* ¶¶ 9, 14.)  Nevias was surprised to hear from Mazzone that he was not eligible for the bonus because of his August start date.  (*Id.* ¶ 14.)  Nevias then followed up with an email to Omnicom's Chief Security Officer ("CSO") and Chief Information Officer ("CIO"), copying Mazzone and Eustache, to ask about his unpaid bonus.  (*Id.* ¶ 15.)  Nevias noted that he had written confirmation from HR that he would receive a prorated bonus, and that he had never received any negative feedback or performance evaluations.  (*Id.*)

In early April 2022, Nevias spoke with HR Director Eustache about his unpaid bonus. (*Id.* ¶ 17.)  Eustache admitted that the company's communication about Nevias's bonus had been "poor," but assured Nevias "that his performance assessment would be heavily based on input

from the agencies that he supported" and that she was expecting direction from the CSO about Nevias's bonus within the next couple of days. (*Id.*) After sending follow-up emails weeks later, Nevias finally heard back from Mazzone on April 28 that the delay in response about Nevias's bonus had been due to "recent security activity." (*Id.* ¶ 24.)

Ultimately, however, though the Management Bonus Pool was approved and 2021 bonuses were paid out in April 2022, Nevias never received a bonus. (*Id.* ¶ 18.) Mazzone told Nevias that though he had "work[ed] hard and may have provided good customer service to [his] agency base constituents," he had exhibited deficiencies in "communication style and attitude." (*Id.* ¶ 25 (alterations in original).) That was the first time Nevias had received negative feedback from Mazzone or anyone at Crystal Vision. (*Id.* ¶¶ 25-26.)

In response to Crystal Vision's decision not to give him any bonus, Nevias contacted higher-ups at the company to discuss his concerns over the metrics used to calculate bonuses. (*Id.* ¶¶ 27-28.) The CIO confirmed Nevias's good reputation with agencies and managers as well as his ability to work well with customers. (*Id.* ¶ 27.) However, Eustache, the HR Director, made negative references to Nevias's "tone" and "availability," problems that allegedly arose in 2022. (*Id.* ¶ 28.) Nevias requested that, going forward, any concerns or negative feedback about his performance be communicated to him immediately. (*Id.* ¶ 31.)

In late May 2022, Crystal Vision circulated an anonymous feedback form to dozens of employees who regularly worked with Nevias. (*Id.* ¶ 29.) The responses were positive, including praise of his "respectful and professional attitude." (*Id.*) Ultimately, no further performance issues were raised with Nevias until a year later, shortly before Nevias was terminated. (*Id.* ¶¶ 31, 39.)

A similar pattern repeated the following year. In the winter of 2023, the CIO spoke with

Nevias on multiple occasions, praising his 2022 performance and indicating that Nevias would very likely receive a bonus for the 2022 year. (*Id.* ¶¶ 33-34.) Once the Management Bonus Pool had been determined, Nevias consistently requested updates on his bonus from his manager, Mazzone, but she did not follow up. (*Id.* ¶ 38.)

Ultimately, just as it did the year before, Crystal Vision declined to give Nevias a bonus for the 2022 calendar year. (*Id.* ¶¶ 30, 37.)

On May 10, 2023, Nevias attended a meeting with the CIO and Mazzone. (*Id.* ¶ 39.) During this meeting, Mazzone told Nevias that she had updated his annual review to reflect problems with his performance. (*Id.* ¶ 39.) This was the first time since the previous bonus cycle that Nevias had heard any negative feedback. (*Id.* ¶¶ 31, 39-40.) Shortly thereafter, Nevias emailed the CIO and Mazzone to memorialize the meeting and again complain about not receiving a bonus, noting his consistently positive performance reviews. (*Id.* ¶ 40.)

A week later, on or about May 19, 2023, Crystal Vision terminated Nevias, stating it was "for cause," but providing no further explanation. (*Id.*)

### B.    Procedural Background

On August 10, 2023, Nevias commenced this action against Crystal Vision. (ECF No. 1.) Nevias amended his complaint on August 18, 2023 (ECF No. 8), and again on November 3, 2023. The Second Amended Complaint filed on November 3, 2023, is the operative complaint. (SAC.)

Crystal Vision filed a motion to dismiss Nevias's Second Amended Complaint on November 17, 2023, for failure to state a claim. (ECF No. 22.) Nevias filed an opposition on December 15, 2023 (ECF No. 28), and Crystal Vision filed a reply in support of its motion on January 5, 2024 (ECF No. 34).

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Such a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  At this stage, the Court must accept as true all well-pleaded factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

## III.    Discussion

In resolving the motion to dismiss, the Court may consider Crystal Vision's offer letter to Nevias and his August 16, 2021, email exchange with HR Director Stephanie Eustache, both attached to Defendant's motion to dismiss.  (ECF Nos. 24-2, 24-3.)  Even if a plaintiff has failed to attach or incorporate by reference a document "upon which it solely relies and which is integral to the complaint," the defendant may produce the document in its motion to dismiss for failure to state a claim "because plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Though Nevias did not attach either document, he did refer to both documents, and the exact terms of the letter and email exchange are integral to the Second Amended Complaint.  (*See* SAC ¶ 12.) Thus, the Court will consider the full offer letter and August 16, 2021, email exchange at this stage.

### A.    Breach of Contract

Nevias alleges that, by refusing to pay him a 2021 or 2022 bonus, based on factors

beyond those enumerated in his contract, Crystal Vision breached both (1) the express terms of the offer letter, and (2) the terms of the August 16, 2021, email exchange with HR Director Eustache.  (SAC ¶¶ 52-53.)  Crystal Vision counters that because it had discretion over Nevias's bonus, it did not commit a breach.  (ECF No. 23 ("Mem.") at 10-11.)

"At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous."  *Orchard Hill Master Fund Ltd. v. SBA Comms. Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).  A contract is ambiguous where a term "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."  *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, Eng.*, 136 F.3d 82, 86 (2d Cir. 1998) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)) (internal quotation marks omitted).

Under New York law, an employee cannot recover on a breach of contract claim for an employer's failure to pay a bonus when the employer has sole and absolute discretion over the bonus decision.  *See Namad v. Salomon Inc.*, 74 N.Y.2d 751, 752–53 (N.Y. 1989) (affirming dismissal of a contract claim for a bonus where "the bonus clause unambiguously vests discretion regarding the amount of bonus compensation to be awarded in defendants' management"); *Bessemer Tr. Co., N.A. v. Branin*, 618 F.3d 76, 92 (2d Cir. 2010) (applying New York law and affirming dismissal of a breach of contract claim for an increased bonus where the bonus provision "reserve[d] to the Salary Committee the decision to award or not to award a bonus, and in what amount").

However, the contract must unambiguously state the employer's absolute discretion over bonus allocation to justify dismissing a breach of contract claim.  *Ashmore v. CGI Grp. Inc.*, No.

11-CV-8611, 2012 WL 2148899 at *9 (S.D.N.Y. June 12, 2012) (holding that contract language that did not state "that the decision to award bonuses was entirely discretionary" and did not indicate that employee's "eligibility to participate . . . could be revoked at any time" fell short of the "magic words" to give employer absolute discretion); *Longhi v. Lombard Risk Sys., Inc.*, No. 18-CV-8077, 2019 WL 4805735, at *6 (S.D.N.Y. Sept. 30, 2019) ("Retaining some discretion regarding the amount and distribution of bonuses does not, on its own, justify dismissal of a bonus claim.").

### 1.    Offer Letter

Crystal Vision's first basis for dismissing the Second Amended Complaint is that Nevias had no contractual right to an annual bonus because Crystal Vision retained absolute discretion under the terms of the offer letter.  (Mem. at 11.)  Nevias argues that he had a contractual right to be "eligible" to participate in Crystal Vision's bonus pool and that Crystal Vision was contractually bound to calculate his bonus based on the metrics it enumerated in the offer letter.

Under the heading "Compensation," the offer letter states: "You are eligible to participate in the management bonus pool and your first bonus will be determined after the 2021 calendar year (payable in 2022)."  (SAC ¶ 12.)  Crystal Vision contends that the qualification of "eligible," rather than a word like "guaranteed," underscores its discretion to pick and choose who gets a bonus and who does not.  (Mem. at 11.)  Nevias argues that he was never treated as "eligible" for the bonus.  (SAC ¶¶ 21, 36.)  Rather, Crystal Vision refused to let him participate in the 2021 or 2022 bonus pools because his salary was the highest base salary on the team and Crystal Vision did not want to have to pay such a high salary-based bonus.  (*Id.*)

Based on the plain meaning of eligibility, the Court is not persuaded that Crystal Vision's interpretation is dispositive at this stage.  Being "eligible to participate" in the bonus program

plausibly means that Crystal Vision should have at least considered Nevias in allocating its annual bonus pool.  *See, e.g.*, *People v. Purdy*, 47 N.Y.S. 601, 602 (1st Dep't 1897), *aff'd*, 154 N.Y. 439 (N.Y. 1897) ("It is unquestionable that etymologically the meaning of 'eligible' is 'capable of being chosen . . . .'").  Taking the facts alleged in the Second Amended Complaint as true, as the Court must at this stage, Crystal Vision's refusal to even consider Nevias for a bonus from the outset of his hiring due to his high base salary would contravene the agreement's promise that Nevias would be "eligible" for a bonus.  (SAC ¶¶ 21, 43.)  Because there is sufficient ambiguity as to the meaning of "eligible" and whether Crystal Vision breached that term, Nevias's breach of contract claim survives the motion to dismiss.

Second, Nevias contends that Crystal Vision had a contractual obligation to use the offer letter's stated metrics for bonus calculation (employee performance and overall discretionary pool approved annually by the company), but that it instead denied his bonuses based on his higher base salary, the fact that he started mid-year in 2021, and in retaliation for his complaints about the 2021 bonus denial.  (*Id.* ¶¶ 19-21, 36-37.)  The offer letter states:

> Your annual bonus target will be 15% of your base salary.  Your actual bonus may be more or less and *will be based on your performance and on the overall discretionary bonus pool approved for the Company each year.  Bonuses are discretionary* and are conditioned upon your continued employment through the payment date of the bonus . . . .

(ECF No. 24-2 (emphasis added).)  Though the letter states multiple times that the bonuses are "discretionary," the fact that the letter also enumerates two concrete metrics from which bonuses "will be based" cuts against a reading that would give Crystal Vision complete discretion to calculate bonuses using any factors it wished.  Nevias asserts a plausible reading of this contract which would require Crystal Vision to have based his 2021 and 2022 bonuses on some combination of (1) Nevias's performance, and (2) the overall bonus pool set by Crystal Vision.

(SAC ¶ 19-21, 45.)  *See, e.g.*, *O'Shea v. Bidcom, Inc.*, No. 01-CV-3855, 2002 WL 1610942, at *4 (S.D.N.Y. July 22, 2002) (finding that the clause, "Incentive Compensation *is earned* upon a Plan Participant's attainment of goals prescribed in his/her Plan," suggested a contractual obligation to pay the referenced compensation).  Crystal Vision does not assert that its management solely relied on these two factors in denying Nevias a bonus.  (*See* Mem. at 12.)  Because there is ambiguity in the offer letter as to whether only these metrics may be used to award bonuses or whether Crystal Vision's "discretion[]" enabled it to look to other factors, it is not appropriate at this stage to dismiss Nevias's breach of contract claims.

Finally, Crystal Vision argues that because of the offer letter's language, including the phrase "bonuses are discretionary," the company had "absolute" discretion over bonus allotment, and thus Nevias lacked a contractual right to a bonus.  (Mem. at 10-11.)  New York law is clear that when an offer letter "unambiguously vests discretion" in an employer, employees have no contractual right to what essentially amounts to a gratuitous promise.  *Namad*, 74 N.Y.2d at 753; *see also O'Grady v. BlueCrest Cap. Mgmt. LLP*, 646 F. App'x 2, 4 (2d Cir. 2016) (summary order) (holding that when an employer has "sole and absolute discretion" over bonus allocation, an employee has no contractual right to it).  However, short of a contract using "magic words" to indicate that the employer has complete and unfettered discretion over bonus allotment, a contractual right potentially does exist, allowing the assertion of a breach of contract claim.  *Culver v. Merrill Lynch & Co., Inc.*, No. 94-CV-8124, 1995 WL 422203, at *3 (S.D.N.Y. July 17, 1995).

The offer letter here falls short of such clear "magic words."  While the "discretion" of the company is mentioned several times, Crystal Vision did not use such strong language as retaining "sole" or "absolute" discretion.  (*See* ECF No. 24-2.)  Further, the letter included two

enumerated, sole metrics that would be used to calculate bonuses. (*See* ECF No. 24-2.) The court in *Ashmore v. CGI Group, Inc.*, determining that an employer lacked absolute discretion over bonus allotment, relied on the fact that the employment contract included language "linking the receipt of a bonus" to enumerated factors, including the employee's job performance and the success of the company. 2012 WL 2148899 at *9. Such qualified discretion in Crystal Vision's offer letter does not make it unambiguously clear that the company maintained absolute discretion over bonus allocations. *See id.* Thus, Nevias has plausibly alleged a contractual right to at least be considered for an annual bonus, and his breach of contract claim survives the motion to dismiss.

### 2.    August 16, 2021, Email Exchange

Crystal Vision moves to dismiss Nevias's breach of contract claim based on his August 16, 2021, emails with HR Director Eustache because Nevias provided no further consideration to support a second, independent contract. (Mem. at 12.) In those emails, Nevias asked Eustache to confirm that his bonus "will be prorated based on an August start date," meaning that he "will receive 5 months bonus." (ECF No. 24-3.) Eustache confirmed this by email the same day. (*Id.*) Nevias contends that because he never received his 2021 prorated bonus, Crystal Vision, in addition to breaching the terms of the offer letter, breached this "subsequent written agreement." (SAC ¶ 53).

"To form a valid contract under New York law, there must be offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d. Cir. 2004) (internal quotation marks omitted). It is also settled law that "[a] promise to perform an existing legal obligation is not valid consideration to provide a basis for a contract." *Goncalves v. Regent Int'l Hotels, Ltd.*, 58 N.Y.2d 206, 220 (N.Y. 1983); *see also*

*Zervos v. S.S. Sam Houston*, 427 F. Supp. 500, 505 (S.D.N.Y. 1976) (holding that when a party has "already bound itself" by a previous contract, the same party cannot "thereafter offer identical consideration" to form a second contract).

To the extent that Nevias is asserting that this email exchange constitutes a second, additional contract, Crystal Vision is correct that the lack of additional consideration necessarily forecloses that argument. (ECF No. 23 at 12.) The consideration binding the offer letter contract (compensation in exchange for services) would be the same as that allegedly binding the email exchange agreement. Because the two are identical, a second contract was not formed. Crystal Vision's motion to dismiss this distinct breach of contract claim is granted.[2]

### B.      Breach of the Implied Covenant of Good Faith and Fair Dealing

Crystal Vision next contends that Nevias's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because it is duplicative with his breach of contract claim. (Mem. at 13.) Nevias counters that Crystal Vision acted in bad faith or with improper motive in denying him a bonus and in terminating him, thus breaching the implied covenant of good faith and fair dealing. (SAC ¶¶ 58-59.)

Under New York law, all contracts include an implied covenant of good faith and fair dealing, which covers "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995) (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69 (N.Y. 1978)). This implied covenant also includes a "pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the

---

[2] It is a separate question, of course, whether the August 16, 2021, email exchange may be admissible as evidence of the parties' intent with respect to the meaning of the employment contract.

fruits of the contract.'" *Id.* (quoting *Kirke La Shelle Co. v. Armstrong Co.*, 263 N.Y. 79, 87 (N.Y. 1933)).

"New York law. . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *see also Polcom USA, LLC v. Affiliated FM Ins. Co.*, 551 F. Supp. 3d 290, 297 (S.D.N.Y. 2021) ("[A] claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." (internal quotation marks and citation omitted)).

Nevias alleges that he was terminated in contravention of the implied covenant of good faith and fair dealing so that Crystal Vision could avoid paying him his bonus.  (SAC ¶ 58.)  But because Nevias was an at-will employee, his argument is foreclosed.  New York law does not permit terminated at-will employees "to pursue a tort claim based on . . . implied covenants of good faith and fair dealing." *Chimarev v. TD Waterhouse Inv. Servs., Inc.*, 99 F. App'x 259, 262 (2d Cir. 2004) (summary order).  After all, as an at-will employee, Nevias had no right to continued employment.  *See Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 300 (N.Y. 1983) (noting New York's "long-settled rule" that "a hiring at will . . . may be freely terminated by either party at any time for any reason or even for no reason"); *Adler v. Payward, Inc.*, 13-CV-8100, 2024 WL 1138941, at *6 (S.D.N.Y. Mar. 14, 2024) (same).

Beyond his claim of wrongful termination, Nevias's breach of the implied covenant of good faith and fair dealing claim is based on the same facts pleaded in his breach of contract claim.  (*See* ECF No. 34 at 13-15.)  Nevias alleges again that the implied covenant of good faith

13

and fair dealing was breached because Crystal Vision stated Nevias would be "eligible" for a bonus that would be based on performance and the overall bonus pool, but then refused to consider Nevias in the annual bonus pool despite his high performance and reviews. (ECF No. 34 at 13-15.)  Because these facts are identical to those alleged in his breach of contract claim (*see* SAC ¶¶ 52-53), the implied covenant of good faith and fair dealing claim is dismissed as duplicative.

### C.    Unjust Enrichment

Crystal Vision also moves to dismiss Nevias's alternative claim for unjust enrichment, arguing that, under New York law, "quasi-contractual relief is unavailable where an express contract covers the subject matter."  (Mem. at 15 (quoting *Karmilowicz v. Hartford Fin. Servs. Grp.*, 494 App'x 153, 157 (2d Cir. 2012)).)

Unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract . . . , circumstances create an equitable obligation running from the defendant to the plaintiff."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012). Thus, unjust enrichment is available as an alternative claim to breach of contract when a contract is determined not to govern.  *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996).  Although Nevias may not ultimately be able to succeed on both his breach of contract claim and his claim of unjust enrichment, "New York law entitles a plaintiff to assert alternative theories of liability," and a plaintiff "is not required to elect one theory of recovery over the other."  *See Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp. 2d 302, 314 (S.D.N.Y. 2007).

Here, the main thrust of Crystal Vision's argument is that Nevias has no contractual right to a bonus and that the bonus was essentially a gratuitous promise.  (*See* Mem. at 12.)  Thus, if a fact finder sides with Crystal Vision about the lack of a contractual relationship when it comes to

the annual bonus, a claim for unjust enrichment may still be proper.  Further, "courts regularly

allow plaintiffs to maintain unjust enrichment and quantum meruit claims as pleadings in the

alternative at the motion to dismiss stage where the validity and scope of the contract is difficult

to determine, [or] where the claims arise out of agreements or understandings of the parties that

were not expressly written in the contract." *Keybanc Cap. Mkts., Inc. v. Extreme Steel, Inc.*, ---

F. Supp. 3d ---, 2024 WL 62457, at *6 (S.D.N.Y. 2024) (cleaned up).  Because there is an open

question about the scope of Nevias's employment contract and whether his bonus was a

contractual right within it, the claim in the alternative for unjust enrichment is viable and Crystal

Vision's motion to dismiss this claim is denied.

### D.    Promissory Estoppel

Crystal Vision next moves to dismiss Nevias's alternative claim of promissory estoppel.

To adequately plead promissory estoppel, a plaintiff must show "1) a clear and unambiguous

promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying

party as a result of that reliance."  *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).

Crystal Vision argues that no clear promise of a bonus was made to Nevias, and that

Nevias failed to allege that he detrimentally relied on such a promise.  (Mem. at 15-18.)

However, Nevias's August 16, 2021, email exchange with HR Director Eustache in which she

confirmed that Nevias "will" receive a pro-rated bonus for his 2021 work is sufficient at this

stage to plausibly constitute a clear and unambiguous promise.  (SAC ¶ 65; ECF No. 24-3.)  And

Nevias has adequately pleaded detrimental reliance in leaving his job of nearly five years to

work for Crystal Vision on the understanding that he would be eligible for a target salary of 15%

of his annual base salary.  (SAC ¶ 10.)  While he was being recruited for the job with Crystal

Vision, Nevias made it clear to the recruiter that he would consider leaving his current job only if

the salary would be $300,000, and Nevias's salary demands were ultimately met only by the

chance to increase his $265,000 annual salary with a 15% target bonus. (*See id.* ¶¶ 10-12.) Thus, taking all of Nevias's factual allegations as true, the Court concludes that he has sufficiently shown detrimental reliance on a clear promise to survive Crystal Vision's motion to dismiss.

E.     **Failure to Pay Wages**

Crystal Vision next contends that Nevias's failure to pay wages claim should be dismissed because "discretionary bonuses" are not "wages" under the NYLL. (Mem. at 18.) NYLL Section 193(1), amended in 2021 with the "No Wage Theft Loophole Act," prohibits an employer from taking "any deduction from the wages of an employee" unless a law permits, or the employee authorizes, the deduction. 2021 N.Y. Laws ch. 397 § 1; N.Y. Lab. Law §§ 193(1), (5). The NYLL defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y. Lab. Law § 190(1).

The New York Court of Appeals has decided two foundational cases on the application of NYLL wage protection to bonuses. In *Truelove v. Northeast Capital & Advisory, Inc.*, the Court of Appeals held that a bonus did not count as "wages" under the NYLL because the bonus allocation was "entirely discretionary and subject to the non-reviewable determination of [the] employer" and "the declaration of a bonus pool was dependent solely upon [the] employer's financial success." 95 N.Y.2d 220, 224 (2000). Over a decade later, the court narrowed its holding in *Truelove*, deciding that a "guaranteed, non-discretionary bonus" that was "expressly link[ed]" to an employee's "labor or services personally rendered" did constitute "wages" under the NYLL. *Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1, 14, 16 (N.Y. 2012) (internal quotation marks omitted).

Here, the contractual language of the offer letter falls somewhere in between *Truelove*

16

and *Ryan*. The letter states multiple times that the bonus is "discretionary," but it also appears to qualify that discretion by adding that the bonus "will be based on your performance and on the overall discretionary bonus pool approved for the Company each year." (ECF No. 24-2.)

The same issue is presented here as was analyzed in depth with respect to Nevias's breach of contract claim: whether Crystal Vision retained absolute discretion over the bonus allotment or whether the language of the offer letter sufficiently limited that discretion such that the bonus would count as "wages" as it did in *Ryan*. And just as the Court found ambiguity in the offer letter for the breach of contract claim, it finds the same here. Because deciphering the ambiguous language of the contract is a question of fact, this claim cannot be dismissed and thus survives Crystal Vision's motion.

### F.    Retaliation

Finally, Crystal Vision argues that Nevias's NYLL retaliation claim should be dismissed because discretionary bonuses are not "wages," and thus Nevias engaged in no form of protected conduct against which he could face retaliation. (Mem. at 20-21.) NYLL Article 7, Section 215, states, in relevant part:

> No employer . . . shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter . . . . An employee complaint or other communication need not make explicit reference to any section or provision of this chapter to trigger the protections of this section.

N.Y. Lab. Law § 215(a).

As discussed above regarding Nevias's failure to pay wages claim, whether or not Nevias's bonus would fall under the NYLL's definition of "wages" depends on whether Crystal Vision retained absolute discretion over bonus allocation, and the question thus hinges on a contractual ambiguity.

Crystal Vision further contends that Nevias's "complaining conduct" did not amount to protected activity under Section 215 because Nevias failed to explicitly accuse the company of "violating any law by not awarding him a bonus." (ECF No. 23 at 20.) But such an argument ignores a key part of the statute: A reporting employee "need not make explicit reference" to the law in order to be protected by it. N.Y. Lab. Law § 215(a); *see also Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) ("[T]he New York Labor Law's anti-retaliation provision unquestionably protects informal complaints made to an employer") (cleaned up). Nevias's emails, videoconferences, and in-person meetings with his direct manager and the company's CIO to address the issue of his bonus despite his consistently positive job performance reviews satisfy the NYLL's requirement that the employee make a "complaint to his or her employer." (SAC ¶¶ 26-28, 39-40.)

Because Nevias plausibly pleads retaliation, and any further inquiry will depend on additional facts, Crystal Vision's motion to dismiss the NYLL retaliation claim is denied.

## IV.    Conclusion

For the foregoing reasons, Defendant's motion to dismiss the complaint is GRANTED in part and DENIED in part. Defendant shall file an answer to the remaining claims within fourteen days after the date of this opinion and order. *See* Fed. R. Civ. P. 12(a)(4)(A).

The Clerk of Court is directed to close the motion at Docket Number 22.

SO ORDERED.

Dated: August 26, 2024
    New York, New York

_____
J. PAUL OETKEN
United States District Judge